256 N.J. Super. 78 (1992)
606 A.2d 417
FRANK D'ANNA, PLAINTIFF-RESPONDENT,
v.
PLANNING BOARD OF THE TOWNSHIP OF WASHINGTON, MORRIS COUNTY, NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1992.
Decided May 8, 1992.
*79 Before Judges COLEMAN, J.H. and BILDER.
Arthur K. Sirkis argued the cause for appellant.
Brian J. Mulligan argued the cause for respondent (Petrino, Skey, Dumont, Matejek & Roskos, attorneys; Brian J. Mulligan and David A. Larkin on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
This is an appeal by the Planning Board of the Township of Washington (Board) from an order of the Law Division granting *80 preliminary approval to plaintiff's major subdivision application pursuant to the automatic approval mechanism described in the Municipal Land Use Law, N.J.S.A. 40:55D-48c. The significant issue presented in this appeal is whether the inadvertent misfiling of a revised application for a major subdivision should trigger the automatic approval provision in our Municipal Land Use Law. The trial court held that it does. We reverse.
On October 24, 1988, plaintiff, one of the owners of a 118 acre tract, submitted an application for a major preliminary subdivision of the tract into 17 residential building lots. That application was never deemed complete because plaintiff never supplied information indicated on a checklist, which had been adopted by ordinance pursuant to N.J.S.A. 40:55D-10.3. In point of fact, Carl Denzler, the Board's planner, found there were approximately 19 deficiencies at the end of October 1989. Plaintiff was notified on November 13, 1989, by Jane Casey, the Board's Clerk, that the application was incomplete.
The application for preliminary subdivision was revised; this time a 14 lot subdivision was sought. The revised application was hand delivered to the Board on December 1, 1989. The Board's Clerk, Jane Casey, was not on duty when the revised plans were submitted due to illness. The revised plans never reached the Board or any of its professionals. Plaintiff's transmittal letter submitted with the revised application stated "I trust that this shall deem the application complete." Plaintiff neither heard from nor inquired of the Board prior to the Board's April 24, 1990, letter in which Ms. Casey advised plaintiff that "[b]ecause of the inactive status of your application, it will be denied without prejudice at the May 14, 1990 meeting of the Washington Township Planning Board."
This prompted a letter from plaintiff, dated May 9, 1990, advising the Board that plaintiff had achieved "Preliminary Major Subdivision Approval by reason of the Planning Board's failure to grant or deny approval within the time period provided in N.J.S.A. 40:55D-1 et seq." Plaintiff asserted that pursuant *81 to N.J.S.A. 40:55D-10.3 the application was deemed complete on January 15, 1990, and the 95 day requirement of N.J.S.A. 40:55D-48c expired on April 20, 1990.
On May 14, 1990, the Board of Health and the Township Engineer informed the Board by letter that the application was still incomplete. The Board denied the application on May 14, 1990, and on August 9, 1990, informed plaintiff that his request for a Certification of Subdivision was also denied.
Plaintiff filed a complaint in lieu of prerogative writs on September 10, 1990. Plaintiff sought an automatic approval which the Board denied. The trial court found that the Board unfortunately lost the revised plans filed with the Board on December 1, 1989. The trial court nevertheless concluded that plaintiff was entitled to automatic approval and entered a final judgment to that effect.
The Board contends that the trial court erred in granting automatic approval essentially because the Board did not act in bad faith and plaintiff was not prejudiced since the application was never complete.
First, we must focus on N.J.S.A. 40:55D-48c, which grants automatic approval for a subdivision of more than 10 lots, 95 days after the submission of a completed application. Next, the focus shifts to N.J.S.A. 40:55D-10.3, which provides objective criteria for determining when an application is to be deemed complete.
N.J.S.A. 40:55D-48c, as relevant to this case, provides:
Upon the submission of a completed application for a subdivision of more than 10 lots, the planning board shall grant or deny preliminary approval within 95 days of the date of such submission or within such further time as may be consented to by the developer. Otherwise, the planning board shall be deemed to have granted preliminary approval to the subdivision.
N.J.S.A. 40:55D-10.3, as relevant to this case, provides:
An application for development shall be complete for purposes of commencing the applicable time period for action by a municipal agency, when so certified by the municipal agency or its authorized committee or designee. In the event that the agency, committee or designee does not certify the application to be *82 complete within 45 days of the date of its submission, the application shall be deemed complete upon the expiration of the 45-day period for purposes of commencing the applicable time period, unless:
a. the application lacks information indicated on a checklist adopted by ordinance and provided to the applicant; and
b. the municipal agency or its authorized committee or designee has notified the applicant, in writing, of the deficiencies in the application within 45 days of submission of the application.
Whenever a preliminary subdivision application is approved, by the Board or through the automatic approval mechanism, the applicant obtains the right for three years not to have the proposed use of the site changed. N.J.S.A. 40:55D-49; S.T.C. Corp. v. Plan. Bd. of Tp. of Hillsborough, 194 N.J. Super. 333, 336, 476 A.2d 888 (App.Div. 1984). In addition, counsel for plaintiff conceded during oral argument that there are other consequences of great magnitude which will be identified later.
We have observed previously that the "application of the statutory time constraints [respecting automatic approval] must be anchored in the reason for their existence. The evil which the automatic approval provisions were designed to remedy was municipal inaction and inattention." Allied Realty, Ltd. v. Borough of Upper Saddle River, 221 N.J. Super. 407, 418, 534 A.2d 1019 (App.Div. 1987), certif. denied, 110 N.J. 304, 540 A.2d 1284 (1988). Here, there was no inattention or inaction. Rather, there was a simple inadvertent act of misfiling or mislaying the resubmitted plans by a substitute clerk. Under those circumstances, we are persuaded that the legislative purpose underlying N.J.S.A. 40:55D-48c, which is to avoid prejudice to developers accruing from dilatory consideration of subdivision applications, "would be unjustifiably distorted in a manner patently subversive to the public interest if the automatic approval mechanism were to be applied in a mechanical fashion" such as was done in this case. Allied Realty v. Borough of Upper Saddle River, supra, 221 N.J. Super. at 418, 534 A.2d 1019; see also Allstate Ins. Co. v. Fortunato, 248 N.J. Super. 153, 162-163, 590 A.2d 690 (App.Div. 1991).
*83 The record before us does not contain as much as a hint of bad faith, sharp practice, overreaching or dilatory conduct on the part of the Board. This is simply a case of innocent inadvertence on the part of the Board's employee who was filling in for the Clerk. The misfiling or mislaying of the resubmission "bespeaks inadvertence, ignorance or misunderstanding" on the part of the substitute within the contemplation of Manalapan Holding Co., Inc. v. Plan. Bd. of Hamilton Tp., 92 N.J. 466, 481, 457 A.2d 441 (1983). Absent evidence of bad faith on the part of the Board such as "untoward delaying tactics, simply to frustrate or forestall the applicant, an evil which the [automatic approval] statute was specifically designed to overcome," automatic approval of the preliminary subdivision application should not have been granted. Id. at 482, 457 A.2d 441.
We believe it is particularly inappropriate to apply the automatic approval statute to this case. As we noted earlier, as of November 13, 1989, plaintiff's application was deemed incomplete because the Township Engineer had not given approval, among other reasons, for lack of proper percolation tests. The same was true with respect to the Department of Health. It was the Board's position that even with the December 1, 1989, revised submission, the application was still incomplete. On June 1, 1990, the Township Engineer and Sanitarian found six of the 14 proposed lots did not "possess percolation tests with acceptable rates." On May 31, 1990, the Chief of Police advised the Board that he found some grade and sight problems on proposed Future Road and that the pavement on Beacon Hill Road at the proposed development is too narrow. Although we do not rest our decision on this issue, it is extremely doubtful that the legislature would have intended to allow an applicant to revise the plans by reducing the number of lots in a proposed subdivision and have the resubmitted plans deemed complete even though the prior deficiencies respecting the land to be developed have not been corrected.
*84 In addition, the automatic approval, based on concessions made by plaintiff's counsel during oral argument, has precluded the Board from imposing terms and conditions for protection of the public's interest. Counsel for plaintiff informed us that any requirement for the installation or modification of a storm water drain system, curbing, street layout and other conditions cannot be imposed by the Board once preliminary approval has been granted. Because final subdivision approval is virtually automatic, at that time plaintiff can sell the lots, even though the buyers may never be able to build on them because the buyers cannot obtain a permit for a septic system or because of flooding conditions or the like. We are of the view that matters vital to the public health and welfare, such as drainage, sewer disposal and waste supply must be resolved before preliminary approval is granted, where the Board has not acted in bad faith. See Field v. Mayor and Council of the Tp. of Franklin, 190 N.J. Super. 326, 332-333, 463 A.2d 391 (1983).
Given the circumstances, we are persuaded that the trial court erred in granting automatic approval because it totally frustrates the Board's obligation to protect the public. See King v. New Jersey Racing Comm'n, 103 N.J. 412, 423-424, 511 A.2d 615 (1986). We hold that the best interest of the public should not be sacrificed based solely on the inadvertence of a substitute worker where the applicant has suffered no prejudice. The failure of the applicant to make an inquiry of the Board between the December 1, 1989, resubmission and the Board's April 27, 1990, letter is strongly corroborative of the absence of prejudice. Beyond that, none has been suggested.
The judgment of the Law Division is reversed. The matter is remanded to the Board to advise plaintiff within 10 days from the date of this decision what is required to complete the application.
Reversed and remanded to the Board.