**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0555-19T4

JAMES L. LAMBERT,
KRIS ANDERSON, SCOTT
CUNNINGHAM, JOHN
HARVEY, ROBERT E. SMITH,
BRENT SAYLOR, EDMUND C.
RICE, ROBERT SALMONS,
DEAN HARKNESS, PATRICK
KELLY, SEAN MONAGHAN,
SEAN T. KELLY,

     Plaintiffs-Appellants,

and

JAIME A. BAUMILLER, MICHAEL
MCCAFFREY, JUDITH STUDER
HAMILTON, CLARK MESSEC, JAY
CHAMBLIN, GEORGE J. HALIK,
JASON STEELE, and JOHN PETER
PURCELL,

     Plaintiffs,

v.

BOROUGH OF BEACH HAVEN
and JOINT LAND USE BOARD
OF BOROUGH OF BEACH
HAVEN and VICTORIA ROSE

CONDOMINIUMS, LLC,

    Defendants-Respondents.
_____

Argued telephonically April 27, 2020 –
Decided May 20, 2020

Before Judges Sabatino, Sumners and Natali.

On appeal from the Superior Court of New Jersey, Law
Division, Ocean County, Docket No. L-2872-18.

Christopher J. Norman argued the cause for appellants
(Platt & Riso, PC, attorneys; Christopher J. Norman, on
the briefs).

Stuart D. Snyder argued the cause for respondent Joint
Land Use Board of Borough of Beach Haven (Stuart D.
Snyder, attorney; Stuart D. Snyder, on the brief).

Nicholas F. Talvacchia argued the cause for respondent
Victoria Rose Condominiums, LLC (Cooper Levenson
PA, attorneys; Frederic L. Shenkman and Jennifer
Broeck Barr, on the brief).

PER CURIAM

Plaintiffs, residents of the Borough of Beach Haven ("Borough"), appeal

from a September 18, 2019 order granting defendants Joint Land Use Board of

Borough of Beach Haven's ("Board") and Victoria Rose Condominium, LLC's

("Victoria") motion to dismiss their verified complaint in lieu of prerogative

writ. We affirm in part and reverse and remand in part for the current members

of the Board to deliberate and revote on the substantive reconsideration of Victoria's application for site plan approval.

## I.

In March 2018, the Borough approved a resolution that declared property located at 510 North Bay Avenue ("Property") as an area in need of rehabilitation. A May 2018 ordinance established a redevelopment plan for the Property and the Borough approved modifications to the existing use, bulk, design, performance, and other standards from those set forth in the Property's applicable zoning ordinance. Victoria was designated as the conditional redeveloper of the Property.

On July 9, 2018, plaintiffs filed a complaint in lieu of prerogative writ against defendants and the Borough. Plaintiffs alleged that the Board's resolution was fatally defective, it violated procedural due process, was an arbitrary, capricious, and unreasonable exercise of zoning power, and was an improper designation of the Property as one in need of rehabilitation. That complaint was eventually dismissed in a January 8, 2019 order.[1]

---

[1] According to plaintiffs' merits brief, they elected not to appeal this order due to "limited funds" and instead filed the instant appeal challenging the "granting of site plan approval and the improper voting process implemented by the . . . Board at the reconsideration hearing."

A-0555-19T4

The Board held two public hearings on August 6 and 27, 2018 regarding Victoria's application for site plan approval for redevelopment of the Property. At those hearings, Victoria argued that its application for development was for a "by right," fully conforming site plan. At the conclusion of the August 27, 2018 hearing, however, the Board's motion to grant site plan approval resulted in a 4-4-1 tie vote, and the application was denied. Two Board members who voted in the negative made comments regarding their votes. Daniel Allen admitted that the application "meet[s] all the requirements," but nevertheless voted against the application based on traffic and structural concerns. Similarly, Ken Muha stated that he "realize[d] that [the application] meets all of the criteria of the redevelopment [plan]," but that he had "some real issues."

The sole abstention vote was made by Nancy Davis, the mayor of the Borough, who explained that she was "still . . . in favor of th[e] project" and "it would be good for Beach Haven." Davis further noted that she believed the project: 1) "has the potential to transform a blighted property in the heart of Beach Haven's business district"; 2) would aid in "removing a building that has been left vacant and neglected for close to [fifteen] years"; 3) would help the Borough maintain its post office; and 4) would provide "much-needed low-income housing units." She chose to abstain, however, despite her feeling that

4

the project "has a lot of merit," because of the animosity it created in the community.

Before the Board issued a written resolution memorializing its denial of Victoria's application, Victoria submitted a September 13, 2018 letter requesting that the Board reconsider that decision. In support of its request, Victoria cited Sartoga v. Borough of W. Paterson, 346 N.J. Super. 569, 580 (App. Div. 2001), for the proposition that "[a] planning board's review of a site plan is ministerial in nature," meaning that the Board was "limited to determining to whether the plan conforms with the municipality's zoning and site plan ordinances." Victoria argued that "the only issue before the Board" at the August 6, 2018 and August 27, 2018 hearings "was whether the site plan conformed to the [r]edevelopment [p]lan and other applicable site plan standards," and that "some members of the Board mistakenly considered whether the [r]edevelopment [p]lan itself was appropriate."

Victoria's reconsideration request was heard at an October 22, 2018 public hearing after Donald Kakstis, who originally voted to approve the application, introduced the motion. At the hearing, Stuart Snyder, the Board's attorney, instructed the Board that "before we finalized [the resolution indicating that Victoria's application did not pass]" the Board members who voted against the

5

application would be permitted to "articulate their reasons and understand they [were] limited to dealing with the site plan," and not zoning issues.

Snyder further noted that with respect to the procedural motion for reconsideration, Donald Wyncoop, an alternate Board member, would be allowed to vote in the place of Joseph Pisano, a board member who originally voted in favor of approving Victoria's application for site plan approval at the August 27, 2018 meeting but was not in attendance at the October 22, 2018 meeting. Counsel for plaintiffs did not object to permitting Wyncoop to vote in place of Pisano on the procedural application and the Board passed the motion to permit reconsideration by a 5-4 vote.

Snyder also advised that the substantive vote on whether to grant Victoria's application would be "limited to the five members who spoke against it[, including] the [m]ayor." During the rehearing, Snyder asked the four members who originally voted against Victoria's application to "give a reason for [their] no vote, based upon the testimony that was before the Board under our site plan ordinance" to determine whether their votes were limited to consideration of the site plan and not zoning issues. Those four members detailed their reasons for originally casting no votes and did not change their votes on reconsideration.

6

Mayor Davis, however, who abstained during the August 27, 2018 vote, voted in favor of granting site plan approval on reconsideration. She stated that she originally abstained because she "felt that this issue was dividing the town" and not "because [she] thought the project was a bad project." More specifically, Mayor Davis noted that the project "offers benefits to the town" and she was "in favor of the project," but her abstention "dealt with the friction that was going on within the town . . . [and she] abstained inappropriately." Snyder concluded that with the mayor's affirmative vote, it was now 5-4 in favor of granting site plan approval to Victoria. After the reconsideration hearing, the Board memorialized their vote granting preliminary and final site plan approval to Victoria in a November 5, 2018 resolution.

On November 29, 2018, plaintiffs filed a second verified complaint in lieu of prerogative writ in the Law Division asserting: 1) the Board should be compelled to memorialize in a resolution the original August 27, 2018 vote denying Victoria's application; 2) the procedural reconsideration vote violated Robert's Rules and was the result of arbitrary and capricious ad hoc procedural rules; 3) the substantive reconsideration vote was improper as four of eight members present voted to deny reconsideration on the merits, and a member who originally abstained subsequently voted to approve the application; 4)

7

preliminary and final site plan approval was invalid because the required variances were not granted, as well as unsafe and inefficient internal traffic circulation and ingress/egress from the parking garage to the street.

The Law Division entered final judgment in favor of defendants and dismissed plaintiffs' complaint with prejudice in a September 18, 2019 order. In its accompanying written opinion, the court noted that with respect to the Board's procedural vote to reconsider, "it was within the discretion of the Board, on its own motion, and before their vote was memorialized in a formal resolution, to exercise its discretion to have another vote on the application." The court further elaborated that it was "within the quasi-judicial discretion of the Board, and unless tainted by fraud, mistake or other illicit motive, is a valid exercise of the Board's discretion."

The court also noted that it was "not persuaded there has been a violation of . . . Robert[']s Rules, even assuming they are applicable to the actions of the Board" because "[t]here was no 'winning side' [as a result of the original tie vote] and therefore any voting member, given the abstention, could have called for reconsideration." It also determined that it could not "conclude that the action . . . of the Board in granting reconsideration and a new vote on the merits of the application constituted a 'change in rules' or 'ad hoc rulemaking' that was

criticized and rightfully rejected in [Amato v. Randolph Twp. Planning Bd., 188 N.J. Super. 439 (App. Div. 1982)]." The court emphasized that "once the notice for reconsideration was filed within [forty-five] days of the vote, and no resolution was yet adopted, the Board could avoid, through reconsideration, a result that did not reflect its true intent."

The court also determined that counsel fees were not warranted despite plaintiffs' argument that they acted as a catalyst to compel adoption of the resolution. The court reasoned that a Board's actions are "not concluded until it adopts a written [r]esolution that memorialized its final decision" and that "[a]lthough . . . there is a statutory obligation to adopt a [r]esolution, the Board as an alternative could have reconsidered its vote, and then adopted a [r]esolution which reflected its actual decision and vote, thus memorializing its final decision." Stated differently, the court concluded that since the motion was filed within forty-five days of the date of the original vote, "the final hearing is viewed as a continuation of the hearing, and therefore there was nothing to reduce to writing until the board heard and acted on the motion for reconsideration."

Finally, the court declined to address whether the members who originally voted to reject Victoria's application considered issues outside of the limited

scope required for site plan approval. It noted that it need not speculate as to those members' motives as it "finds the plan was consistent with the redevelopment ordinance and ultimately properly approved by the Board." This appeal followed. During the oral argument on the appeal, counsel informed us that the construction of the project is nearly completed. Nonetheless, the issues before us are not moot. Plaintiffs limit their arguments to the following contentions:

> POINT I
>
> THE TRIAL COURT'S JUDGMENT AFFIRMING THE RESOLUTION OF SITE PLAN APPROVAL MUST BE REVERSED AND THE LAND USE BOARD MUST BE ORDERED ON REMAND TO RENDER FINDINGS OF FACTS AND CONCLUSIONS OF LAW IN A RESOLUTION OF DENIAL OF PRELIMINARY AND FINAL SITE PLAN APPROVAL, PURSUANT TO N.J.S.A. 40:55D-10(g).
>
> A. Reconsideration Was Not Warranted In The Absence of Fraud, Mistake or Substantial Change In The Prior Proceedings.
>
> B. The Procedural Reconsideration Vote Was Fatally Tainted By Councilman Kakstis Introducing the Motion For Reconsideration, Which Violated Robert's Rules and the [Municipal Land Use Law (MLUL)].
>
> C. Reconsideration Was Tainted by the Land Use Board's Arbitrary And Capricious Manipulation Of

The Voting Process Through "Ad Hoc" Procedural Rulemaking.

D. With Only Eight . . . Eligible Members Present For The Substantive Reconsideration Vote, The Best Hypothetical Outcome For Victoria Rose and The Land Use Board Minority Was A 4-4 Vote, Resulting In A Denial On Substantive Reconsideration.

E. Assuming For Sake Of Argument That Only The Majority In The Original Decision Were Permitted To Vote On Substantive Reconsideration, Board Member Mayor Davis Should Have Been Precluded Under Robert['s] Rules From Casting The Deciding Vote By Virtue Of Her Abstention In The Original Decision.

POINT II

ON REMAND, THE APPELLATE PANEL MUST AFFORD THE FOUR MEMBERS IN THE MAJORITY OF THE ORIGINAL DECISION THE OPPORTUNITY TO COLLECTIVELY AND INDEPENDENTLY APPOINT LEGAL COUNSEL OF THEIR CHOICE TO PREPARE THE RESOLUTION OF DENIAL.

POINT III

PLAINTIFFS MUST BE AWARDED COUNSEL FEES IN THIS LITIGATION, PURSUANT TO N.J.S.A. 40:55D-10(g)(2), AS THE CATALYST FOR COMPELLING A JUDGMENT TO ADOPT A RESOLUTION OF DENIAL.

A-0555-19T4

II.

A municipal agency decision "is subject to review in the Law Division in an action in lieu of prerogative writs[,] . . . and the Law Division's review of the . . . decision must be based solely on the agency record." Willoughby v. Planning Bd. of Twp. of Deptford, 306 N.J. Super. 266, 273 (App. Div. 1997) (internal citation omitted) (citing R. 4:69). "The Law Division reviews the record to determine whether the . . . factual findings are based on 'substantial evidence' and whether its discretionary decisions are 'arbitrary, capricious and unreasonable.'" Id. at 273-74 (citation omitted).

"When we consider an appeal of a trial court's review of a municipal board's action, we are bound by the same standard as the trial court. We give deference to a municipal board's decision, and such decisions should be overturned only when proven arbitrary, capricious or unreasonable." Cohen v. Bd. of Adjustment of Borough of Rumson, 396 N.J. Super. 608, 614-15 (App. Div. 2007) (internal citation omitted). "[M]unicipal action is not arbitrary and capricious if exercised honestly and upon due consideration, even if an erroneous conclusion is reached." Bryant v. City of Atl. City, 309 N.J. Super. 596, 610 (App. Div. 1998). However, "[a] determination predicated on unsupported findings is the essence of arbitrary and capricious action." Ibid.

A-0555-19T4

III.

In point I.A, plaintiffs maintain that the August 27, 2018 vote and decision "should have been treated as 'final' as a matter of law . . . [but that] the [Board members who originally voted to approve Victoria's application] manipulated the procedural rules to reverse the outcome." We disagree.

With respect to site plan approval, N.J.S.A. 40:55D-46(a) provides that "[a]n ordinance requiring site plan review and approval shall require that the developer submit to the administrative officer a site plan and such other information as is reasonably necessary to make an informed decision as to whether the requirements necessary for preliminary site plan approval have been met." Then, pursuant to N.J.S.A. 40:55D-46(b), "[t]he planning board shall, if the proposed development complies with the ordinance and this act, grant preliminary site plan approval." See also Sartoga, 346 N.J. Super. at 582-83 ("A planning board has no authority to deny site plan approval based on its view that a use permitted under the zoning ordinance . . . is inconsistent with principles of sound zoning.")

N.J.S.A. 40:55D-49(a) "expressly authorizes planning boards to impose general terms, conditions, and requirements peculiar to site plan approval as related to public health and safety." W.L. Goodfellows & Co. of Turnersville,

13

Inc. v. Washington Twp. Planning Bd., 345 N.J. Super. 109, 116 (App. Div. 2001) (holding that a stormwater management plan should be approved, conditioned on the acquisition of a drainage easement that comported with a drainage plan reviewed and accepted by Board professionals). However, as noted, this discretion is limited and "a planning board's role is somewhat 'circumscribed' in considering a site plan application," ibid. (citing Shim v. Washington Twp. Planning Bd., 298 N.J. Super. 395, 411 (App. Div. 1997)), to that of assuring "compliance with the standards under the municipality's site plan and land use ordinance." Ibid.

With respect to a Board's ability to reconsider its decisions, an "agency's authority encompasses all express and implied powers necessary to fulfill the legislative scheme that the agency has been entrusted to administer." In re Application of Virtua-W. Jersey Hosp. Voorhees for Certificate of Need, 194 N.J. 413, 422-23 (2008). Although the exercise of an agency's authority through "inherent or implied power is not boundless," N.J. Dep't of Labor v. Pepsi-Cola Co., 170 N.J. 59, 61 (2001), our courts have long recognized that an administrative agency has inherent power to reconsider, reopen and rehear prior decisions in the absence of any legislative restriction to the contrary. See, e.g.,

In re Kallen, 92 N.J. 14, 24 (1983); In re Parole Application of Trantino, 89 N.J. 347, 364 (1982); Handlon v. Town of Belleville, 4 N.J. 99, 106-07 (1950).

The general principles governing agency reconsideration do not confine exercise of an agency's inherent power to a narrow set of circumstances involving fraud or a material change of fact or law. Rather, "[t]he only limitations are the considerations of reasonableness, fairness and good cause." In re 1982 Final Reconciliation Adjustment for Jersey Shore Med. Ctr., 209 N.J. Super. 79, 92 (App. Div. 1986) (citations omitted); see also Duvin v. State, Dep't of Treasury, Public Emps.' Ret. Sys., 76 N.J. 203, 207 (1978) (recognizing an agency's power "to reopen or to modify and to rehear orders previously entered by it . . . should be invoked only for good cause shown[, and] . . . must be exercised reasonably, and . . . with reasonable diligence"). "Good cause may be established by showing that reopening proceedings would 'serve the ends of essential justice and the policy of the law.'" In re Van Orden, 383 N.J. Super. 410, 421 (App. Div. 2006) (quoting Handlon, 4 N.J. at 107).

In discussing limitations on administrative reconsideration, the Court in Ruvoldt v. Nolan, 63 N.J. 171, 183-85 (1973), held that one of the factors to be considered was the timing of the review, as this impacts the extent of reliance by affected individuals and the equities of the case. "The limitation of

reasonable diligence in reopening prior administrative determinations has been recognized in cases decided since Handlon." Skulski v. Nolan, 68 N.J. 179, 195 (1975). The Court explained that "equitable considerations are relevant in evaluating the propriety of conduct taken after substantial reliance by those whose interests are affected by subsequent actions." Id. at 198.

Here, Victoria requested reconsideration on September 13, 2018, seventeen days after the original vote and well within the forty-five-day time period for the Board to memorialize its final decision in a resolution. In its letter to the Board, Victoria emphasized that the Borough had already adopted a redevelopment plan modifying the standards currently set forth in the Property's applicable zoning ordinance and that the site plan it set forth during the August 27, 2018 hearing was in conformance with that redevelopment plan. Indeed, the comments by Board members Allen and Muha during the August 27, 2018 hearing indicated that they believed, at least in part, that the application satisfied the requirements of the redevelopment plan but still voted to deny Victoria's application.

We agree with the trial court's factual and legal conclusions and similarly conclude there was substantial evidence in the record that the Borough's already adopted redevelopment plan "made discrete adjustments to the land use and

building requirements in this area [and] superseded other land use requirements and bulk provisions as applicable throughout the Borough" and Victoria's proposed site plan was consistent with the redevelopment ordinance. Thus, the Board had good cause to reopen proceedings in order to "serve the ends of essential justice and the policy of the law" by determining the basis for those who denied Victoria's application. See Van Orden, 383 N.J. Super. at 421 (quoting Handlon, 4 N.J. at 107).

## IV.

Plaintiffs next contends in point I.B that the procedural reconsideration vote was improper as the motion allowing the vote was introduced by Kakstis and, pursuant to Robert's Rules, "only the four . . . members who voted against site plan approval in the [o]riginal [d]ecision could introduce a procedural motion for reconsideration." Plaintiffs further contend that Kakstis's actions were contrary to the statutory voting scheme of the MLUL as that statute "does not authorize a third category of 'tie vote-no winner' outcome to liberally permit a revote on reconsideration," and like Robert's Rules, it "contemplates that the minority members' involvement on a development application ends after a substantive vote is taken." Again, we disagree.

In support of its argument, plaintiffs rely on a provision of the Borough of Beach Haven, Code § 2-2(F)(2) which states that "[t]he Borough Council shall provide by resolution rules of procedure not inconsistent with law or this Code" and that "[p]roceedings at all meetings shall be conducted in accordance with Robert[']s Rules of Order, Revised, except where the Borough Council provides otherwise by resolution."  Although the Borough Council elected to follow those procedural guidelines, the Board was authorized to adopt its own rules and regulations to govern its procedures.  See Borough of Beach Haven, Code § 19-5(A) (The Board "is authorized to adopt bylaws, rules and regulations governing its procedural operations which shall be consistent with [the MLUL], ordinances of the Borough, and other applicable law.")  The Board was therefore not obligated to follow the reconsideration procedures set forth in Robert's Rules.  Snyder confirmed, and plaintiffs do not dispute, that the Board never formally adopted a specific set of procedural rules and regulations for conducting its hearings.

Instead, the Board was entitled to adopt more general principles permitting reconsideration to reopen and rehear prior decisions in the absence of contrary legislative restrictions.  See Handlon, 4 N.J. at 106-07.  And, these general principles, unlike those enumerated in Robert's Rules, do not limit the

introduction of motions to reconsider to Board members who were on the "winning side" of the original vote. Thus, it was not improper for Kakstis to make such a motion as the Board was not bound by Robert's Rules and, in light of the admissions by Allen and Muha that the application met the criteria for redevelopment, there was a justifiable reason to warrant reconsideration as at least two voting members of the Board clearly considered issues outside the scope of what was permitted when they voted against Victoria's application.

V.

Plaintiffs argue in point I.C that the Board allowed nine members to vote on whether to allow reconsideration, but improperly limited the substantive reconsideration vote to the five members who either originally abstained or denied the application. They further contend in point I.D that because Pisano, who originally voted to approve Victoria's application, was not present at the October 22, 2018 reconsideration hearing, only eight Board members were eligible to participate in the substantive reconsideration vote and the best possible result would have been a 4-4 tie denying Victoria's application. We agree that it was improper for the Board to approve the application without having all members of the Board explicitly state their votes at the

A-0555-19T4

reconsideration hearing, and it should not have considered a prior vote from a member who was absent during the substantive reconsideration.

Even though the Board was permitted to adopt its own rules regarding reconsideration procedures, those rules must not be "inconsistent with [the MLUL]." See N.J.S.A. 40:55D-8(a). The MLUL requires that all actions of the Board must be taken by "a majority vote of the members of the municipal agency present at the meeting," except under certain circumstances. N.J.S.A. 40:55D-9(a); see also Cox and Koenig, N.J. Zoning & Land Use Administration, § 20-3 (2020). Consequently, the Board erred when it failed to obtain sufficient votes in favor of Victoria's application at the reconsideration hearing, as only the mayor voted "yes", and four members voted "no." The Board similarly erred when it presumed that Board member Pisano would again vote to approve Victoria's application despite his absence at the reconsideration hearing. For the procedure to be consistent with the MLUL, all Board members present should have voted, and the Board should not have considered the prior vote by an absent Board member.

We conclude, however, that the Board's actions do not warrant the remedy requested by plaintiffs. We addressed a somewhat similar circumstance in Schmidhausler v. Planning Bd. of Borough of Lake Como, 408 N.J. Super. 1,

20

12-13 (App. Div. 2009). In that case, a board member was ineligible to vote because he failed to comply with the MLUL provision that members who are absent from a meeting at which a hearing was held must certify that they read the transcript or listened to the recording of the meeting he or she missed before they are eligible to vote. See N.J.S.A. 40:55D-10.2. The Schmidhausler court concluded:

> Rather than denying the application outright or putting all of the parties to the cost and expense of an entire new hearing, a simple logical remedy is to remand the matter to the Board and have all current members deliberate and revote, with those who had not attended one or all of the hearings in this matter review the transcript of any meeting or meetings that they may have missed, certify they have done so, and then have them deliberate and vote as well.
>
> [408 N.J. Super. at 13.]

While we acknowledge the situation here is different in that most of the Board members were present at the previous meetings but failed to vote during the substantive reconsideration vote, whether due to absence or the belief that they were not permitted to vote or did not have to reassert their prior votes, the failure to explicitly obtain a majority vote of those present at the meeting was nevertheless a similar procedural flaw. We see no principled reason to not apply the same remedy discussed in Schmidhausler here, as there was no indication at

21

the reconsideration hearing, before the trial court, or now on appeal, that any original "yes" votes, including Pisano's, sought to, or did, change their position. Their affirmative votes, however, should have been memorialized at a meeting in which they attended.

VI.

Plaintiffs argue in point I.E that Davis should have been precluded from changing her abstention to an affirmative vote at the October 22, 2018 substantive reconsideration. In support of their argument, plaintiffs again rely on Robert's Rules for the proposition that "[a]bstentions . . . are not counted and have no effect on the result" of a vote, and that since Davis was not a part of the votes to deny the application at the August 27, 2018 vote, the Board should not have permitted her to vote on substantive reconsideration.

As we have concluded, Robert's Rules did not apply by default to Board hearings. In any event, the Board members that were given the opportunity to be heard on reconsideration were limited to those who originally voted against the application and Mayor Davis. The motion to reconsider was primarily to determine whether any of those members denied the application or abstained from voting altogether based on issues outside of the scope of the proceeding. Thus, Mayor Davis, like any of the Board members who voted to deny the

22

application, could then understand the scope of the August 27, 2018 hearing and change her vote accordingly. This procedure was appropriate as the Board had "good cause" to reconsider its decision, and it was not unreasonable or unfair to allow Board members to reevaluate their votes. See Jersey Shore Med. Ctr., 209 N.J. Super. at 92.

VII.

Finally, because we find that the Board's procedural reconsideration vote was appropriate, we need not address the merits of plaintiffs' argument in points II and III that they be provided the opportunity to acquire independent counsel in order to prepare a resolution of denial, and that they are entitled to attorney's fees pursuant to N.J.S.A. 40:55D-10(g)(2). We, however, make the following brief remarks.

Even if, on remand, the Board denies Victoria's site plan application, allowing the option to assign independent counsel to the Board members who originally voted to deny Victoria's site plan application is not warranted for two reasons. First, plaintiffs present no legal authority and we can find no support in the Rules or the MLUL to warrant the option of appointing independent counsel under these circumstances. Second, it is mere speculation that Snyder intentionally "advanced the policy agenda" of the members who originally voted

23

to grant the application and there is insufficient evidence in the record to conclude that he acted in bad faith. As discussed, other than failing to solicit votes from all Board members present during the substantive reconsideration vote, Snyder's legal guidance with respect to the procedural reconsideration vote was not inconsistent with general principles regarding agency reconsideration, the MLUL, or local ordinances.

With respect to plaintiffs' argument that they are entitled to attorney's fees, N.J.S.A. 40:55D-10(g)(2) states, in pertinent part:

> If the municipal agency fails to adopt a resolution as hereinabove specified, any interested party may apply to the Superior Court in a summary manner for an order compelling the municipal agency to reduce its findings and conclusions to writing within a stated time, and the cost of the application, including attorney's fees, shall be assessed against the municipality.

As the trial court correctly stated in its written decision, a Board action "is not concluded until it adopts a written [r]esolution that memorialize[s] its final decision." While the forty-five-day window for the Board to memorialize its original August 27, 2018 decision denying Victoria's application remained open, the Board was permitted to reconsider whether to grant that application. The Board then memorialized its revote in a written resolution. Accordingly,

the Board did not "fail[] to adopt a resolution" in violation of N.J.S.A. 40:55D-10(g)(2) and plaintiffs are not entitled to attorney's fees.

## VIII.

In sum, while irregular, we are satisfied that the reconsideration procedures employed by the Board were on notice and the decision was principled and consistent with the applicable local ordinances. Although it may be better practice for land use boards to adopt formal rules of procedure for such applications, we conclude it would be inequitable to invalidate the Board's decision to permit reconsideration of the initial vote here absent a showing of harm. See Cox and Koenig, N.J. Zoning & Land Use Administration, § 3-7.1 (2020) (citing Yahnel v. Bd. of Adjust. of Jamesburg, 76 N.J. Super. 546, 550 (Law Div. 1962) aff'd 79 N.J. Super. 509 (App. Div.), certif. den. 41 N.J. 116 (1963)). No such harm is demonstrated here. Thus, we affirm that portion of the trial court's September 18, 2019 order with respect to the procedural vote allowing the Board to reconsider its original denial of Victoria's application.

We, however, reverse the trial court's September 18, 2019 order to the extent it approved the procedure surrounding the substantive reconsideration vote and remand the matter to the Board for further proceedings. On remand, current Board members should "deliberate and revote, with those who have not

done so, reading the transcript or listening to the tape of any meeting or meetings they may have missed, providing their certification, and then deliberating and voting on the application as well." Schmidhausler, 408 N.J. Super. at 14. Our decision does not bind any Board members to repeat the vote they cast before, nor do we intimate any views on the substantive propriety of the outcome.

To the extent we have not addressed any of the parties' arguments it is because we have concluded they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-(e)(1)(E).

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION