783 A.2d 750

W.L. GOODFELLOWS AND COMPANY OF TURNERSVILLE, INC., PLAINTIFF–APPELLANT, v. WASHINGTON TOWNSHIP PLANNING BOARD, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 2, 2001—Decided November 14, 2001.

Before Judges STERN, LINTNER and PARKER.

*Nelson C. Johnson,* attorney for appellant.

*Regonese, Albano & Viola,* attorneys for respondent (*Michael P. Albano,* on the brief).

The opinion of the court was delivered by

LINTNER, J.A.D.

On December 15, 1998, defendant, Washington Township Planning Board (Board), denied the application of plaintiff, W.L. Goodfellows and Company of Turnerville, Inc., for preliminary site plan approval, based upon plaintiff's failure to demonstrate that it

had secured a drainage easement that comported with the plaintiff's own plan, and its conclusion that plaintiff did not demonstrate sufficiently that the health, safety and welfare of the surrounding properties would not be adversely affected. Plaintiff's plan incorporated a retention basin within the property's fifty-foot landscape buffer area and a drainage easement to accommodate and carry excess stormwater across the adjoining property and into a stormwater runoff system located on Ledon Lane. The Board denied the application, notwithstanding plaintiff's representations to the Board that it was in the process of negotiating with its neighbor to procure the easement.

Plaintiff filed its complaint in lieu of prerogative writ in December 1998, seeking to overturn the decision of the Board and for damages for violation of its rights under 42 *U.S.C.* §§ 1983 and 1988. On March 16, 1999, plaintiff purportedly entered into an agreement with the adjoining property owners for the required drainage easement. On July 9, 1999, the Law Division judge denied plaintiff's motion for summary judgment by which plaintiff sought: (1) a grant of its application for preliminary site plan approval; (2) retention of jurisdiction; and (3) a plenary hearing on plaintiff's entitlement to monetary damages on its constitutional claims. The judge then encouraged the Board to file a motion for summary judgment, which he thereafter granted by order of August 20, 1999, dismissing plaintiff's complaint.[1] Plaintiff filed a notice of appeal which we dismissed as interlocutory on September 14, 2000 because there remained, unresolved, a counterclaim by the Board for fees and expenses related to its review of plaintiff's application. The parties thereafter entered into a settlement of the Board's counterclaim and this appeal followed. During the

---

[1] Summary judgment is generally an inappropriate procedure in these types of cases because actions in lieu of prerogative writ, which pertain to zoning and planing board decisions, contemplate the filing of briefs and oral argument following submission of the administrative record, thereby facilitating early disposition. *Odabash v. Mayor of Dumont,* 65 *N.J.* 115, 121 n. 4, 319 *A.2d* 712 (1974); *Willoughby v. Planning Board of the Township of Deptford,* 306 *N.J.Super.* 266, 274, 703 *A.2d* 668 (App.Div.1997).

pendency of this appeal, the Township of Washington, which is not a party to the within action, passed an ordinance prohibiting the existence of storm drainage facilities, including retention basins, within the fifty-foot landscape area.

On appeal plaintiff contends that the Board's denial of its application violated the provisions of *N.J.S.A.* 40:55D–46 and the judge erred in dismissing plaintiff's claims for damages for alleged violations of its constitutional rights. We reverse the motion judge's denial of plaintiff's motion for summary judgment and hold that, on the record before the Board, the preliminary site plan should have been granted subject to the procurement of the proposed drainage easement. The Board should determine whether plaintiff's easement comports with plaintiff's plan. We also hold that, consistent with general principles of equity and application of the time of decision rule, the provisions of *N.J.S.A.* 40:55D–49 should be applied and plaintiff should be afforded the benefit of the statutory protection against a change in use requirements, as if preliminary site plan approval had been granted. In light of our holding, we also reverse the motion judge's entry of summary judgment dismissing plaintiff's complaint and remand to the Law Division for further proceedings on plaintiff's claim for alleged violations of 42 *U.S.C.* §§ 1983 and 1988.

The following are the facts relevant to this appeal. Plaintiff, as contract purchaser of property located in Washington Township, Gloucester County, made an application to the Board for preliminary site plan approval for the development of a restaurant. It is undisputed that plaintiff's application, as modified, did not require any variances. It was also deemed complete and satisfied all submission requirements. The application was discussed at three public hearings which were held by the Board on September 15, October 20 and November 24, 1998. At the final hearing the Board's Planner advised that the drainage plan had been revised to include an overflow drainage pipe across the lot owned by Arthur and Veronica Willet to Ledon Lane. The Planner also testified that a recorded drainage easement document should be

submitted for review and should contain "a tree protection plan to protect the existing tree line between lots 5.03 and 6." At the same hearing, the Board's Engineer, Brian Peterman, was asked:

BOARD MEMBER: You've reviewed the whole drainage plan for this area?

MR. PETERMAN: Yes.

BOARD MEMBER: Do you feel confident that it can support this additional facility that it will work?

MR. PETERMAN: Yes. The calculations provided to us show that this will work. It's not the preferred system because it's a retention as opposed to detention but it is permissible under the Township ordinance.

At the hearing on September 15, plaintiff's counsel advised the Board that he and plaintiff had discussions with Willet regarding the drainage easement, that it was "not a done deal," and that the discussions were not concluded. The Board's resolution denying plaintiff's application expresses the following specific reason for its action:

The applicant failed to demonstrate by way of credible evidence that it had secured a drainage easement which comported with its plans submitted and which would be required in order to demonstrate to the Board a properly functioning and safe detention basin for the proposed site.

In rejecting plaintiff's motion for summary judgment, the motion judge enunciated the following findings at commencement of argument:

Washington Township should have brought a motion for summary judgment, too, because I would have granted their motion, cause I'm going to deny [plaintiff's], because when a planning board says where's your plan to take care of the run-off, and you say we're still negotiating the easement to carry the excess water . . . you got to give—you got to show them you got the easement.

You don't have the easement. It's one little point, but it's enough to turn you down and they made it. . . . You got the easement the next day? Too late.

Counsel for the Board agreed with the judge's conclusions, saying:

The engineer was asked about whether or not this design system worked because of all the surrounding neighbors having great concerns about flooding in the area, et cetera, and Mr. Peterman indicated that he believed that the system that was on the paper would work.

The system that was on the paper that was there was a plan submitted by the applicant that had an outfall structure for the drainage.

. . . .

There was no indication that this easement was in place, and it was on that basis as set forth in the resolution ... which clearly sets forth the basis of the denial was the lack of the drainage easement.

The judge concluded:

I'm going to deny your motion because on the record and on the papers I can't grant you summary judgment because you said you were getting an easement for the outfall pipe. You didn't have it and they turned you down because of it.

Our analysis begins with Article 6 of the Municipal Land Use Law, *N.J.S.A.* 40:55D–37 to –59. *N.J.S.A.* 40:55D–38b(3) mandates that any municipal ordinance governing site plan applications must require plans for adequate water drainage. *N.J.S.A.* 40:55D–39a provides that municipal ordinances requiring planning board approval may include "provisions for off-tract water, sewer, [and] drainage ... improvements which are necessitated by ... land development...." The Washington Township ordinance, section 21–6.2b6, provides that the Board may require preliminary site plans to contain "storm drainage design including size, type, location and grade of pipes, location of structures in the system, design calculations and profiles." Section 21–7i requires site plan review to consider the "stormwater collection and disposal systems."

The legislative intent behind the Municipal Land Use Law was to create "consistency, uniformity, and predictability" in the development approval process. *Pizzo Mantin Group v. Township of Randolph,* 137 *N.J.* 216, 229, 645 *A.*2d 89 (1994). To accomplish this legislative intent, *N.J.S.A.* 40:55D–46b specifically provides that "[t]he planning board shall, if the proposed development complies with the [municipal site plan] ordinance and this act, grant preliminary site plan approval." A municipality effectuates the general purposes of our land use law by incorporating them in its site plan ordinances, thereby providing "clear standards to guide both property owners and planning boards." *Pizzo Mantin Group, supra,* 137 *N.J.* at 230, 645 *A.*2d 89.

Our land use law "contemplates active involvement by planning boards" in the review process, which should exercise its discretion by "affirmatively interact[ing] with developers" based

upon its "expertise and familiarity with local conditions." *Id.* at 232–233, 645 *A.*2d 89. The Board's discretion is encompassed in the provisions of *N.J.S.A.* 40:55D–49a, which expressly authorizes planning boards to impose general terms, conditions, and requirements peculiar to site plan approval as related to public health and safety. When preliminary approval is granted subject to specific terms, conditions and requirements, the developer has three years in which to seek final approval or a limited extension. *N.J.S.A.* 40:55D–49b and c.

Notwithstanding its exercise of discretion, a planning board's role is somewhat "circumscribed" in considering a site plan application. *Shim v. Washington Twp. Planning Bd.,* 298 *N.J.Super.* 395, 411, 689 *A.*2d 804 (App.Div.1997). The purpose of site plan review is

> to assure compliance with the standards under the municipality's site plan and land use ordinances. Generally, the Board concerns itself with on-site conditions. See *N.J.S.A.* 40:55D–38, –39 and –41. But see *N.J.S.A.* 40:55D–42 (municipality may, by ordinance, require applicant to pay pro-rata share of off-site improvements necessitated by site plan). Thus, ordinarily, the denial of a site plan application would be a "drastic action" when the pertinent ordinance standards are met. [William M. Cox, New Jersey Zoning and Land Use Administration § 15–10 at 289 (15th ed. 1996)]; *see also Dunkin' Donuts of New Jersey, Inc. v. Township of North Brunswick,* 193 *N.J.Super.* 513, 515, 475 *A.*2d 71 (App.Div.1984) (when applicant meets site plan ordinance standards, application may not be denied because of off-site conditions); *Lionel's Appliance Ctr., Inc. v. Citta,* 156 *N.J.Super.* 257, 269, 383 *A.*2d 773 (Law Div.1978). While site plan review gives the Board wide discretion to assure compliance with the objectives and requirements of the site plan ordinance, "it 'was never intended to include the legislative or quasi-judicial power to prohibit a permitted use.'" *PRB Enter., Inc. v. South Brunswick Planning Board,* 105 *N.J.* 1, 7, 518 *A.*2d 1099 (1987) (quoting *Lionel's Appliance Ctr., Inc., supra,* 156 *N.J.Super.* at 264, 383 *A.*2d 773).
>
> [*Id.* at 411, 689 *A.*2d 804.]

A planning board may, however, deny a site plan application if it lacks sufficient specificity or if an applicant has failed to provide pertinent information sufficient to assess the adequacy of a storm-water management plan. *Morris County Fair Housing Council v. Boonton Twp.,* 228 *N.J.Super.* 635, 642, 550 *A.*2d 777 (Law Div.1988). Because drainage and sewage may have a pervasive impact on the public health and welfare, we have recognized that

the feasibility of specific proposals or solutions must be resolved before preliminary approval is given. *Field v. Mayor and Council of Twp. of Franklin,* 190 *N.J.Super.* 326, 332–333, 463 *A.*2d 391 (App.Div.1983).

On appeal, defendant maintains that plaintiff's failure to submit a drainage easement was critical and the Board was justified in denying the application because plaintiff failed to provide sufficient information to demonstrate a safe, working detention basin. We disagree. Applying the above principles to the record before us, we conclude that sufficient information was presented by plaintiff concerning the specificity of its drainage plan, including its feasibility and adequacy, to require the Board to grant preliminary site plan approval conditions upon production of an easement that complied with the drainage plan under review.

The Board's Planner testified that he had reviewed plaintiff's plan and, as a result, it had been revised to include the required overflow drainage pipe across the adjacent lot. He essentially advised the Board that the site plan should be subject to the recording and review of the drainage easement and a tree protection plan. The record is bare of any testimony from the Planner that plaintiff's plan lacked the required specificity to permit him to pass upon its appropriateness. Most telling was the Board's Engineer's testimony that he reviewed the drainage plan and the area involved, made his calculations, and was confident that it could support the additional facility and would work. He added that the system proposed was "permissible" under the Township's ordinance.

We note further that, although the motion judge was mistaken in his legal conclusions, he correctly characterized the evidence in the record as showing that the Board's denial was based upon plaintiff's mere failure to have the easement in hand at the time the Board voted on the application. At argument on the motion, the Board's counsel recognized that the reason for the Board's denial of the site plan was that the "easement was not in place."

■ Because we conclude that preliminary site plan should have been approved, conditioned on the acquisition of a drainage easement that otherwise comports with the drainage plan reviewed and accepted by the Board's professionals, equity dictates that plaintiff should have the benefit of the statutory protection against the subsequent change in use requirement, prohibiting the existence of a drainage facility within the fifty-foot landscape buffer, as if the preliminary site plan approval had been granted. *See S.T.C. Corporation v. Planning Bd. of Hillsborough,* 194 *N.J.Super.* 333, 476 *A.*2d 888 (App.Div.1984); *N.J.S.A.* 40:55D–52a.

■ We reverse the order denying plaintiff's motion for summary judgment and remand to the Law Division for entry of an order granting plaintiff's preliminary site plan, conditioned on the acquisition of a drainage easement that otherwise comports with the drainage plan reviewed and accepted by the Board's professionals, and remanding to the Board for further proceedings consistent with this opinion. We also reverse the order dismissing plaintiff's complaint and remand for further proceedings plaintiff's allegations respecting violation of its constitutional rights. In remanding plaintiff's constitutional claims, we make no determination respecting the sufficiency of either plaintiff's pleadings or the factual allegations contained therein. However, we note in passing that an allegation that a local administrative board was motivated by bad faith reasons does not, generally, support a claim for constitutional deprivation of due process where a state court system is available to correct the error. *Chiplin Enterprises, Inc. v. City of Lebanon,* 712 *F.*2d 1524, 1527 (1st Cir.1983).

Reversed and remanded for further proceedings consistent with this opinion.